Nada I. Shamonki (SBN 205359)
nshamonki@mintz.com
MINTZ LEVIN COHN FERRIS
GLOVSKY & POPEO PC
2029 Century Park East, Suite 1370
Los Angeles, CA 90067
Telephone:  310-586-3200

Andrew H. DeVoogd (*Pro hac vice to be filed*)
dhdevoogd@mintz.com
MINTZ LEVIN COHN FERRIS
GLOVSKY & POPEO PC
One Financial Center
Boston, Massachusetts  02111
Telephone:  (617) 542-6000

Attorneys for Plaintiff
NETLIST, INC.

David A. Jakopin (CA SBN 209950)
Audrey Lo (CA SBN 253738)
PILLSBURY WINTHROP SHAW
PITTMAN LLP
2550 Hanover Street
Palo Alto, CA 94304
David.jakopin@pillsburylaw.com

Carolyn S. Toto (CA SBN 233825)
PILLSBURY WINTHROP SHAW
PITTMAN LLP
725 South Figueroa Street
Suite 2800
Los Angeles, CA 90017-5406
Carolyn.toto@pillsburylaw.com

Attorneys or Defendant
INPHI CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NETLIST, INC., A Delaware Corporation<br><br>Plaintiff,<br><br>v.<br><br>INPHI CORPORATION, A Delaware Corporation<br><br>Defendant. | Case No. 2:09-cv-06900-FMO(RNBx)<br><br>**JOINT STATUS REPORT REGARDING STATUS OF REEXAMINATION PROCEEDINGS**<br><br>Honorable Fernando M. Olguin |

Pursuant to the Court's January 31st, 2014 Order Removing Case From Active Caseload (Doc. No. 76), Plaintiff Netlist Inc. ("Netlist") and Defendant Inphi Corporation ("Inphi") hereby submit this Joint Status Report Regarding the Status of

the Reexamination Proceedings to update the Court on certain reexamination and interference proceedings.

## I. PROCEEDINGS INVOLVING THE ASSERTED PATENTS

As of the date of this filing, the following inter partes reexaminations involving U.S. Patent No. 7,619,912 ("the '912 Patent") have now concluded: Reexamination Control No. 95/001,339 (which has been merged with Reexamination Control Nos. 95/000,578 and 95/000,579).[1,2]

The following provides the Court with an update on substantive actions taken in connection with the reexaminations involving the '912 Patent since the parties filed their joint status report on March 30, 2020.

### A. The '912 Patent

As previously reported, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") issued, on June 15, 2020, a decision affirming the Patent Trial and Appeal Board's decisions affirming the invalidity of certain claims and the patentability of other claims in the '912 Patent. The period to appeal the Federal Circuit's decision has expired. The Patent Office has now terminated the proceedings, issuing a reexamination certificate based upon Reexamination Requests 95/001,339; 95/000,578; and 95/000,579 on February 8, 2021.

### B. Interference Proceedings

Two interference proceedings have been requested: one by Sanmina-SCI ("SSC") and its licensee Inphi as to all of the Asserted Patents, which bears U.S. Patent Application No. 11/142,989 (the "SSC '989 Application"), and another by

---

[1] As noted in the parties' August 2016 Joint Status Report, the Patent Office closed prosecution on the merits for the inter partes reexamination of U.S. Patent No. 7,532,537 (Reexamination Control No. 95/001,381)(hereinafter '537 Patent). A reexamination certificate issued on August, 2, 2016.

[2] As noted in the parties' December 2018 Joint Status Report, the Patent Office issued a reexamination certificate for U.S. Patent No. 7,636,274 (Reexamination Control No. 95/001,337) (hereinafter '274 Patent) cancelling all claims on November 5, 2018.

SMART as to the '912 Patent bearing U.S. Patent Application No. 12/902,073 (the "'073 Application").

As previously reported, the SSC '989 Application has been abandoned. The '073 Application issued as U.S. Patent No. 10,755,757 on August 25, 2020. The parties are not aware of any interferences being declared.

## II. NETLIST AND INPHI PROPOSALS REGARDING THE CASE

### A. Netlist Proposal

This case has been stayed for over a decade of extensive post-grant review proceedings challenging the validity of, among others, the asserted '912 Patent. After the Court of Appeals for the Federal Circuit endorsed the validity of the reexamined claims of the '912 Patent, the Patent and Trademark Office issued a Reexamination Certificate on February 8, 2021. Several days after this, successor counsel for Netlist appeared in this matter on February 12, 2021, which only recently received the case file from predecessor counsel—in hard copy file boxes—within the last week.

Netlist does not see the need to substantively address the advocacy Inphi advances at this time, let alone in the vehicle of this Status Report. Rather, in view of the current procedural posture and circumstances of this case, Netlist respectfully requests that (1) the case be reopened, and (2) after a reasonable time sufficient to allow successor counsel to come up to speed on the issues, a CMC convene at which a scheduling order, hopefully mutually agreed among the parties, could be considered and entered by this Court.

As Inphi suggests below, it makes good sense to provide new counsel for Netlist some reasonable time to ascertain the facts of the case. And to the extent the issue of intervening rights might be amenable to early determination, Netlist would be willing to explore that option, along with some limited accompanying discovery to enable a candid assessment by each side of the claims and defenses following the Reexamination Certificate of the '912 Patent.

### B. Inphi Proposal

Netlist, in its First Amended Complaint filed in 2009, asserted that Inphi sold "components used in computer memory modules that incorporate the Netlist technology claimed in the '537 Patent, '912 Patent, and '274 Patent. Inphi's infringing products include but are not limited to the Inphi's Isolation Memory Buffer or 'iMB'" (First Amended Complaint ¶ 8). The First Amended Complaint did not identify any specific claim of these asserted patents that was infringed, instead generically alleging infringement of the patents. (First Amended Complaint ¶¶ 8-20). In response to interrogatory requests propounded by Inphi before the Stay in this case was entered, Netlist in April, 2010 also failed to identify any specific claim of the asserted patents that was allegedly infringed by any Inphi product, the iMB in particular.

As a result of the issued Reexamination Certificates, <u>all</u> claims of the '274 patent are invalid, <u>all</u> claims of the '537 patent that remain were substantively amended with additional limitations, and could not have been the basis for the original infringement allegations, and from the '912 patent, other than formerly dependent claims 16 and 17, all claims that remain were substantively amended with additional limitations, and could not have been the basis for the original infringement allegations.

As to dependent claims 16 and 17, dependent claim 16 was amended into independent form during the reexamination, and there exists a defense of intervening rights with respect to claims 16 and 17.

Furthermore, it is apparent there cannot be infringement. The Inphi iMB is a semiconductor chip, which has many different functions in it that are selectively available for use, but clearly does not include limitations that the reexamined patent claims require. As shown below, using the now independent claim 16 of the '912 patent as an example, there are a host of claim limitations that are plainly not part of the Inphi iMB as shown in the **underlined and bolded** elements below that are not met, without even bringing up technical specifications that lead to other non-

1  infringement defenses:

3  16. [The memory module of claim 15] A *memory module* connectable to a computer
4  system, the *memory module* comprising:
5      **a printed circuit board**;
6      **a plurality of double-data-rate (DDR) memory devices coupled to the
7  printed circuit board, the plurality of DDR memory devices having a first
8  number of DDR memory devices arranged in a first number of ranks**;
9      a circuit coupled to the printed circuit board, the circuit comprising a logic
10 element and a register, the logic element receiving a set of input signals from the
11 computer system, the set of input signals comprising at least one row/column address
12 signal, bank address signals, and at least one chip-select signal, the set of input signals
13 configured to control a second number of DDR memory devices arranged in a second
14 number of ranks, the second number of DDR memory devices smaller than the first
15 number of DDR memory devices and *the second number of ranks less than the first
16 number of ranks*, the circuit generating a set of output signals in response to the set of
17 input signals, the set of output signals configured to control the first number of DDR
18 memory devices arranged in the first number of ranks, wherein the circuit further
19 responds to a command signal and the set of input signals from the computer system
20 by selecting one or two ranks of the first number of ranks and transmitting the
21 command signal to at least one DDR memory device of the selected one or two ranks
22 of the first number of ranks; and
23     a phase-lock loop device coupled to the printed circuit board, the phase-lock
24 loop device operatively coupled to the plurality of DDR memory devices, the logic
25 element, and the register,
26     wherein the command signal is transmitted to only one DDR memory device at
27 a time.

These **bolded and underlined** elements simply do not exist within the Inphi iMB chip – as the Inphi iMB chip does not contain a printed circuit board and does not contain a plurality of memory devices.  As such, direct infringement simply cannot exist.

There should not be any argument by Netlist that the elements that are *underlined and italicized* above simply are not necessary for the Inphi iMB to operate – as the Inphi iMB chip can be used as part of a "computer system" instead of being within the recited "memory module", and the Inphi iMB is specifically adapted to work without the requirement of "rank multiplication" that is required by the limitation "the second number of ranks less than the first number of ranks."  This clearly illustrates that the Inphi iMB has substantial non-infringing uses.  As such, there can be no contributory infringement.

Since no specific claim of the three asserted patents has ever been alleged by Netlist to be infringed by Inphi, and, as shown by Inphi discovery responses in April, 2010, Inphi has always believed that it did not infringe, Netlist cannot meet the high bar to prove inducing infringement.

While Inphi strongly believes that this case should be dismissed with prejudice, lead counsel for Inphi, identified below, discussed this matter with new Netlist counsel Drew DeVoogd on March 23, 2021, and agreed that it made sense to provide new counsel for Netlist some reasonable time to ascertain the facts of the case.  If, however, after that period of time, Netlist continued to believe that this case should move forward, Inphi believes that a motion for summary judgment of non-infringement and intervening rights should be entertained by the Court in an expeditious manner, as there are sufficient facts for which there is no dispute that will allow Inphi to prove there is no infringement or liability.

## III. CONCLUSION

Counsel for Netlist and Inphi request that the Court move this case forward based upon the above proposals, in a manner that the Court determines appropriate.

Dated: March 25, 2021

MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO PC

By: /s/ Nada I. Shamonki
Nada I. Shamonki

Attorneys for Plaintiff
NETLIST, INC.

Dated: March 25, 2021

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: /s/ David A. Jakopin
David A. Jakopin

Attorneys for Defendant
INPHI CORPORATION

-7-

## DECLARATION OF CONSENT

Pursuant to Civil Local Rule 5-4-3.4(a)(2) regarding signatures, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from Nada I. Shamonki.

Dated: March 25, 2021

PILLSBURY WINTHROP SHAW PILLSBURY LLP

By: /s/ David A. Jakopin
David A. Jakopin
Attorneys for Defendant
INPHI CORPORATION

-8-